**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-010**

**Filing Date: December 15, 2008**

**Docket No. 27,967**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellee,**

**v.**

**LONG TRAN,**

       **Defendant-Appellant,**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Albert S. "Pat" Murdoch, District Judge**

Gary King, Attorney General
M. Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Office of Erlinda Ocampo Johnson, L.L.C.
Erlinda O. Johnson
Albuquerque, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

{1}    Defendant appeals from an order of the district court denying his motion to reconsider his petition to vacate and set aside convictions. At issue is whether Defendant is entitled to collaterally attack guilty pleas and no contest pleas he entered in December 1994, April 1996, and August 2000, on grounds that his attorneys failed to advise him of the specific immigration consequences of his pleas as required by *State v. Paredez*, 2004-NMSC-036, 136 N.M. 533, 101 P.3d 799, which we followed and applied in *State v. Carlos*, 2006-NMCA-141, 140 N.M. 688, 147 P.3d 897. We affirm the district court on grounds that

1

Defendant failed to make a prima facie case entitling him to a hearing on his petition.

**FACTS**

**{2}**     This case involves three separate plea and disposition agreements Defendant entered into to resolve felony charges brought against him in four separate indictments. In the first indictment, filed on June 22, 1994, the Bernalillo County grand jury alleged that Defendant committed four felony offenses on October 10, 1993: commercial burglary; criminal damage to property over $1000; possession of burglary tools; and conspiracy to commit commercial burglary, or in the alternative, conspiracy to commit criminal damage to property over $1000, or in the alternative, conspiracy to commit possession of burglary tools.

**{3}**     The second indictment was filed on June 29, 1994, alleging that on April 5, 1994, Defendant committed eight felony offenses of: auto burglary; larceny over $250; conspiracy to commit auto burglary, or in the alternative, conspiracy to commit larceny over $250; auto burglary of a second automobile; larceny over $250; conspiracy to commit auto burglary, or in the alternative, conspiracy to commit larceny over $250; and two counts of criminal damage to property.

**{4}**     The two cases were consolidated for plea purposes. Defendant agreed to plead guilty to possession of burglary tools in the first case, and no contest to the two auto burglary charges in the second case, with the remaining charges in both cases dismissed. Since each crime was a fourth degree felony, Defendant was exposed to a basic sentence of eighteen months on each charge, but the State agreed that Defendant would receive a concurrent sentence, for a total exposure of three years.

**{5}**     The plea and disposition agreement was reduced to writing as required by Rule 5-304 NMRA. Therein, Defendant acknowledged, "I understand that a conviction may have an effect upon my immigration or naturalization status[,]" and he signed and dated the plea and disposition agreement on December 7, 1994. In addition, a hearing, also required by Rule 5-304, was held by the district court that same day to determine whether it would accept or reject the agreement. During the course of that hearing, the following discussion took place:

> THE COURT:  . . . [W]hat is your immigration status?
>
> [DEFENDANT]:  Permanent resident.
>
> THE COURT:  All right. Do you know if pleading to these charges will affect that?
>
> [DEFENDANT]:  Yes.
>
> THE COURT:  It might or it might not? Does he know whether it will or not?
>
> [DEFENDANT]:  [I] understand that it might.

THE COURT: I see. Good enough. [Defense counsel], you've discussed that with [Defendant]?

[DEFENSE COUNSEL]: Yes, Judge. For the record, I would like to put on the record that I have discussed this fully with [Defendant], the effect on his immigration status. And he's advised me that he will take his chances with Immigration and accept the plea.

THE COURT: Good enough.

{6} The district court approved the plea and disposition agreement. At the sentencing hearing, the district court advised Defendant: "I want to point out to you that you put your entire life here in the United States in jeopardy when you do something like this. Not only is it possible that you can go to the state penitentiary, but you could be deported for what you have done." A judgment and order deferring sentence was filed on February 2, 1995, in which Defendant received a deferred sentence of three years with conditions of probation.

{7} A third indictment was filed on November 15, 1995, alleging that on September 5, 1995, Defendant committed: shoplifting; conspiracy to commit shoplifting; and tampering with evidence, all of which are felonies. Again, Defendant made a plea agreement with the State. In the repeat offender plea and disposition agreement, which Defendant signed on April 9, 1996, Defendant agreed that he would plead guilty to the felony of shoplifting over $250, admit he violated his probation in the first and second cases, and admit he was the same person convicted of possession of burglary tools and auto burglary in the first and second cases. In exchange, the State agreed to dismiss the remaining two charges in the third indictment and not bring habitual offender proceedings against Defendant. In the agreement Defendant agreed that the convictions in the first and second cases "are valid and free from fundamental error." Defendant also agreed that he "waives any collateral attack on the validity of each of the above felony convictions," and just like the first plea and disposition agreement, acknowledged, "I understand that being convicted may effect my immigration or naturalization status." Again, the district court approved the agreement. On May 2, 1996, the order, sentence, and order suspending sentence was filed. Defendant's probation was revoked, and Defendant received concurrent sentences of eighteen months in the first and second cases, to be served consecutively to the sentence of eighteen months imposed in the third case, for a total of three years. The sentence was suspended, and Defendant was placed on probation for three years with credit for the time already served on probation during the original period of deferral.

{8} Defendant was discharged from his probation in the first and second cases on February 17, 1998, and on January 13, 1999, the district court granted Defendant an early discharge from his probation in the third case.

{9} The fourth indictment was filed ten months later on November 30, 1999, alleging that on October 3, 1999, Defendant committed five felony offenses: kidnaping; aggravated battery with a deadly weapon; conspiracy to commit aggravated battery with a deadly

3

weapon; assault with intent to commit a violent felony; tampering with evidence; and one count of misdemeanor aggravated battery. Again, the parties entered into a repeat offender plea and disposition agreement, and again the district court approved the agreement. In this agreement, signed on August 11, 2000, Defendant agreed to plead guilty to the felony offense of false imprisonment as a lesser included offense to kidnaping and agreed that he was the same person convicted of shoplifting in the third case. In return, the State agreed to dismiss all remaining charges contained in the fourth indictment. Again, by his signature to the agreement, Defendant agreed that the shoplifting conviction in the third case was "valid and free from fundamental error," that Defendant "waives any collateral attack on the validity of the conviction[]," and that Defendant understood that being convicted "may affect my immigration or naturalization status."

**{10}** A judgment, partially suspended sentence and commitment was filed on December 15, 2000. Defendant was sentenced to a prison term of two and one-half years, with execution of eighteen months suspended, for an actual initial term of incarceration of twelve months, with one month of presentence confinement credit. Defendant was allowed to serve the remaining eleven months in the Bernalillo County Detention Center with release under its Community Corrections Program with work release authorized. On December 11, 2002, Defendant was discharged from his probation in the fourth case.

**{11}** Defendant was taken into the custody of the Immigration and Customs Enforcement (ICE) on March 29, 2007, where he is facing deportation proceedings. On May 8, 2007, Defendant filed a petition for writ of error coram nobis, seeking to have all the foregoing convictions vacated and set aside because there is no "concrete and certain evidence that [Defendant] was advised of the specific immigration consequences of his convictions." The district court denied the petition without a hearing, stating:

> The court did everything possible to advise [Defendant] of the immigration consequences of his plea. The[re] can be no doubt that [Defendant] *knew* there would be immigration consequences prior to the acceptance of the plea. The court will not, now, allow him to withdraw the plea he entered with complete knowledge of possible repercussions.

**{12}** Defendant then filed a motion to reconsider, asserting that the record in the four cases "do[es] not contain references that [Defendant] was advised of the exact immigration consequences of his pleas," and that "defense counsel's failure to state, with exactitude, that [Defendant] was deportable and would be facing virtual certain deportation as a result of the pleas, rendered his advise [sic] ineffective." Furthermore, Defendant argued, while the [district] court recited to its own efforts in advising him of the immigration consequences of his pleas, *Paredez* and *Carlos* "require criminal defense counsel, not the district court, to first determine the immigration status of the defendant, then read and interpret federal immigration law and specifically advise the defendant whether a guilty plea will result in almost certain deportation." Defendant added:

4

The test, in this case, is not whether the Court advised [Defendant] of the exact immigration consequences, but rather whether defense counsel advised him, with exactitude, of the fact that his pleas rendered him certainly and virtually deportable. In order for this court to assess whether [Defendant] truly understood and was told by each of his defense attorneys that he was deportable and would be subject to deportation, this Court must have a hearing on the petition.

The motion to reconsider asserts that "[t]he consequences are far too grave to assume that each one of [Defendant's] attorneys, in the above cited cases, told [Defendant] that he would be deported as a result of his plea" and "[a]bsent concrete and certain evidence that [Defendant] was advised, by his attorneys, of the specific immigration consequences of his convictions in [the four cases], his convictions must be vacated and set aside." Defendant also filed a separate request for a hearing on his motion to reconsider "for the purpose of determining the exact advise [sic] defense counsel afforded [Defendant.]" The motion to reconsider was denied without a hearing, and Defendant appeals.

## DISCUSSION

**{13}** We first discuss the procedural posture of this case and the applicable standard of review on appeal, followed by our analysis of whether Defendant made a prima facie case which entitled him to an evidentiary hearing in the district court.

### Procedural Posture and Standard of Review

**{14}** The case was filed in the district court as a writ of error coram nobis. Without elaborating on the history and function of the writ, we adopt the following as an adequate description of the writ and its purposes from 18 Am. Jur. *Trials: Coram Nobis Practice in Criminal Cases* § 2 (2008):

As a general rule, the common-law writ of coram nobis or its statutory counterpart is used in criminal cases where there is no other remedy available to obtain a review, and also a correction or vacation, of a judgment of conviction by the court in which the judgment was rendered because of errors of fact, which are not apparent on the record, that affect the validity and regularity of the proceedings. In other words, the writ is used to attack a judgment of conviction that, although valid on its face, is nevertheless defective because of facts outside the record, where the defect is such as to deprive the defendant of his constitutional right to a fair trial. However, the writ is available to review errors of fact only, not errors of law. Furthermore, the purpose of the writ is not to permit the defendant to retry the case. Instead, it is only to afford an additional legal procedure to correct errors of fact that were unknown to the defendant, to his counsel, and to the court at the time of the trial, so that injustice will be prevented. To obtain relief by coram nobis, however, the petitioner must show that the errors of fact alleged would have prevented the entry of a judgment of conviction, had the correct facts been known to the court at the time of the trial.

Ordinarily, to obtain a review of a judgment of conviction by means of coram nobis, the errors of fact alleged in the petition for the writ must

1.      Be outside the record;

2.      Be unknown to the defendant or his attorney at the time of the trial, without fault on their part;

3.      Not have been put in issue at the trial;

4.      Be unknown to the trial court and not have been passed on by it; and

5.      Be of such a character as, if known, would have prevented the rendition of the judgment.

**{15}** The writ is available to one who, though convicted, is no longer in custody, to provide relief from collateral consequences of an unconstitutional conviction due to errors of fact or egregious legal errors which are of such a fundamental character that the proceeding itself is rendered invalid, permitting the court to vacate the judgment. *See United States v. Morgan*, 346 U.S. 502, 510-11 (1954); *Njai v. United States*, 484 F. Supp. 2d 1040, 1050 (D. Ariz. 2007). Thus, in this case, Defendant is asserting that due to infirmities in his guilty pleas, those convictions are open to collateral attack. *See Njai*, 484 F. Supp. 2d at 1052 (agreeing with the defendant that if counsel gave the wrong advice about the immigration consequences of his plea, this would amount to a fundamental error in violation of a defendant's constitutional right to effective assistance of counsel and warrant setting aside the guilty plea pursuant to a writ or error coram nobis); *United States v. Mora-Gomez*, 875 F. Supp. 1208, 1211-12 (E.D. Va. 1995) (same); *People v. Chaklader*, 29 Cal. Rptr. 2d 344, 345 (Ct. App. 1994) ("The writ of error *coram nobis* is an appropriate procedure for a postjudgment challenge to a guilty plea allegedly induced by mistake, fraud, or coercion.").

**{16}** When Rule 1-060 NMRA of our Rules of Civil Procedure was adopted, the Supreme Court abolished this writ. Rule 1-060(B)(6) states: "Writs of coram nobis, coram vobis, audita querela and bills of review and bills in the nature of a bill of review, are abolished, and the proceeding for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." Thus, *State v. Romero*, 76 N.M. 449, 453-54, 415 P.2d 837, 839-40 (1966) held that where a prisoner had served his sentence and been released, Rule 1-060(B)(4) was the vehicle to seek relief from a criminal judgment claimed to be void. *See also State v. Lucero*, 90 N.M. 342, 343, 563 P.2d 605, 606 (Ct. App. 1977) (noting that Rule 1-060(B) was intended to retain all the substantive rights of the writ of coram nobis). Addressing the provision in the rule that a motion under Rule 1-060(B)(4)

6

must be brought within a "reasonable time" our Supreme Court said: "It is only logical that a void conviction cannot be vitalized by the lapse of time. It follows necessarily that there is no limitation of time within which a motion must be filed under the provisions of Rule 60(b)(4)." *Romero*, 76 N.M. at 454, 415 P.2d at 840 (citations omitted).

**{17}** We therefore consider this as a case in which Defendant appeals from an order of the district court denying a motion to reconsider his motion to set aside his guilty pleas pursuant to Rule 1-060(B)(4) (providing that on motion and upon such terms as are just, the court may relieve a party from a final judgment where the judgment is void).

**{18}** Defendant contends that his guilty pleas are constitutionally infirm because his attorneys did not advise him of the immigration consequences of his pleas as required by *Paredez* and *Carlos*. Thus, in this collateral attack on his guilty pleas, Defendant contends that his counsel was ineffective. This is a claim which we review de novo as a question of law. *See State v. Gallegos*, 91 N.M. 107, 111, 570 P.2d 938, 942 (Ct. App. 1977) (stating that in a habitual offender proceeding in which a defendant makes a collateral attack on a prior guilty plea based on an allegation that counsel was incompetent, the validity of the guilty plea is a matter to be decided as a question of law).

**Prima Facie Case**

**{19}** Defendant asserted in the district court he was entitled to set aside his convictions because there is no "concrete and certain evidence that [Defendant] was advised of the specific immigration consequences of his convictions." When the petition was denied Defendant filed a motion to reconsider asserting that "[t]he consequences are far too grave to assume that each one of [Defendant's] attorneys, in the above cited cases, told [Defendant] that he would be deportable as a result of his plea." On appeal, Defendant argues that, "[a]bsent evidence, on the record that counsel advised [Defendant] of the immigration consequences, it can not [sic] be said that [Defendant] was fully advised of the exact immigration consequences of his pleas." These arguments and assertions overlook Defendant's burden in this type of proceeding.

**{20}** Defendant seeks relief on the basis that his counsel was constitutionally ineffective. The Sixth Amendment entitled Defendant to the effective assistance of counsel in connection with his guilty and no contest pleas. *Carlos*, 2006-NMCA-141, ¶ 10. To establish that he was denied the effective assistance of counsel, Defendant had the burden to show: (1) that the attorney's advice about the consequences of his pleas was below an objective standard of reasonableness; and (2) that were it not for his attorney's advice, he would not have made the pleas. *Id.* ¶ 10; *see Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that to establish ineffective assistance of counsel, a defendant has the burden of establishing that the performance of his attorney was deficient and that he was prejudiced by that deficient performance), *superceded in statute as stated in Avellar v. Dubois*, 30 F. Supp. 2d 76 (D. Mass. 1998).

7

**{21}** To satisfy the first prong, Defendant was required to show a violation of *Paredez*, which holds:

> [C]riminal defense attorneys are obligated to determine the immigration status of their clients. If a client is a non-citizen, the attorney must advise that client of the specific immigration consequences of pleading guilty, including whether deportation would be virtually certain.

2004-NMSC-036, ¶ 19. Defendant failed to present any evidence in his moving papers, by affidavit, transcripts, or otherwise, that any of his attorneys failed to comply with *Paredez*. Defendant only makes a general assertion, in a supplemental brief filed in the district court, that defense counsel failed to specifically advise him that his pleas would result in virtually certain deportation before he made the pleas in the first and second cases. As to the third and fourth cases, Defendant's supplemental brief states Defendant has no recollection whether his counsel specifically advised him.

**{22}** Defendant was also required to make a prima facie showing that he was prejudiced in that if it were not for the failure of his attorney to properly advise him as required by *Paredez*, he would not have made the pleas. *Id.* ¶¶ 19-20 (stating that if a defendant suffers prejudice by an attorney's failure to provide the required advice regarding immigration consequences, he receives ineffective assistance of counsel. To establish prejudice, "[a d]efendant must show he would not have entered into the plea agreement if he had been given constitutionally adequate advice about the effect that his guilty plea would have on his immigration status.") (internal quotation marks and citation omitted); *Carlos*, 2006-NMCA-141, ¶ 19 ("A non-citizen must show that he would not have entered the plea if he had been given constitutionally adequate advice as to the specific consequences of his plea, together with a reasonable probability that he would have gone to trial instead of pleading guilty.") (citations omitted). Defendant totally failed to make any showing or even allege in the district court that if he had received the advice which *Paredez* requires, he would not have entered into any of the pleas and would have gone to trial.

**{23}** Because counsel is presumed to have provided adequate assistance, when a defendant asserts on direct appeal that counsel was ineffective, we will remand for an evidentiary hearing "only when a defendant presents a prima[]facie case of ineffective assistance of counsel." *State v. Bernal*, 2006-NMSC-050, ¶ 33, 140 N.M. 644, 146 P.3d 289. The rule is no different in a proceeding collaterally attacking a conviction. We recently said, "because a successful collateral attack on a prior conviction requires a showing of fundamental error, [it is the d]efendant's burden to produce evidence demonstrating the invalidity of those convictions, not the State's burden to prove their validity." *State v. Pacheco*, 2008-NMCA-059, ¶ 8, 144 N.M. 61, 183 P.3d 946 (citation omitted), *cert. denied*, 2008-NMCERT-003, 143 N.M. 682, 180 P.3d 1181. We have consistently adhered to this requirement whenever a defendant has made a collateral attack on a prior conviction. *See, e.g.*, *State v. Wildenstein*, 91 N.M. 550, 552, 577 P.2d 448, 450 (Ct. App. 1978) ("When a collateral attack is made on permissible grounds, the claim will be insufficient unless a

specific factual basis is alleged; vague conclusional charges are insufficient. . . . The ineffective counsel claim was insufficient because it failed to allege facts, set out in particularity, of [the defendant's] claim of inadequate criminal representation.") (internal quotation marks and citations omitted); *State v. Montoya*, 81 N.M. 233, 235, 465 P.2d 290, 292 (Ct. App. 1970) (stating that since the defendant's claims provided no basis for post-conviction relief, his motion for post-conviction relief was properly denied without a hearing); *Smith v. Ninth Judicial Dist.*, 78 N.M. 449, 450, 432 P.2d 414, 415 (1967) (stating that in making a collateral attack on a guilty plea to armed robbery, "[t]he burden of showing incompetency of counsel was on the [defendant]"); *Johnson v. Cox*, 72 N.M. 55, 59, 380 P.2d 199, 202 (1963) (recognizing that while the burden is on the defendant in a collateral attack proceeding, the defendant's claim that he was not represented by counsel had merit because it was supported by an affidavit of counsel that while he represented the defendant on a rape charge, he did not represent the defendant on the subsequent habitual offender charge).

**{24}** Defendant's assertion in the district court, which he has repeated on appeal, is that he is entitled to set aside his guilty pleas in the absence of "concrete and certain evidence" that trial counsel advised him as required by *Paredez*. This argument ignores long-standing, well-settled precedent which places the burden on a defendant to plead a prima facie case that a conviction is constitutionally invalid. Because Defendant failed to plead or make a prima facie case that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment, we affirm the district court. In light of our holding, we do not address whether *Paredez* retroactively applies to Defendant when he made his pleas and completed serving his sentences years before *Paredez* was decided. *But see State v. Frawley*, 2007-NMSC-057, ¶ 34, 143 N.M. 7, 172 P.3d 144 (stating that an "old" rule applies to cases on direct and collateral review); *State v. Mascarenas*, 2000-NMSC-017, ¶ 24, 129 N.M. 230, 4 P.3d 1221 ("[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." (quoting *Teague v. Lane*, 489 U.S. 288, 301 (1989)); *Paredez*, 2004-NMSC-036, ¶ 16 ("We go one step further . . . and hold that an attorney's non-advice to an alien defendant on the immigration consequences of a guilty plea would also be deficient performance.").

**CONCLUSION**

**{25}** The order of the district court denying Defendant's motion to reconsider his petition to vacate and set aside convictions is affirmed.

**{26}** **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

**MICHAEL D. BUSTAMANTE, Judge**

_____

**RODERICK T. KENNEDY, Judge**

Topic Index for *State v. Tran*, No. 27,967

**AE**       **Appeal and Error**
AE-WE       Writ of Error

**AT**       **Attorneys**
AT-IA       Ineffective Assistance of Counsel

**CA**       **Criminal Procedure**
CA-CA       Collateral Attack or Estoppel
CA-GP       Guilty Plea
CA-NP       Nolo Contendere Plea
CA-VA       Vacating Judgment

**FL**       **Federal Law**
FL-IM       Immigration