**Certiorari Granted, October 18, 2013, No. 34,311**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2013-NMCA-102**

**Filing Date:  August 8, 2013**

**Docket No. 32,044**

**STATE OF NEW MEXICO,**

  **Plaintiff-Appellee,**

**v.**

**CESAR FAVELA,**

  **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Gary K. King, Attorney General
Pranava Upadrashta, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**SUTIN, Judge.**

**{1}**  Defendant Cesar Favela appeals from the district court's denial of his motion for relief from judgment and petition for writ of habeas corpus, wherein Defendant sought to set aside his guilty plea on grounds of ineffective assistance of counsel.  Defendant contends that his counsel did not adequately advise him of the immigration consequences of his decision to enter a plea of guilty, as required by *State v. Paredez*, 2004-NMSC-036, ¶ 19,

1

136 N.M. 533, 101 P.3d 799. The facts of this case require this Court to determine whether the district court, in determining whether Defendant's plea was knowing and voluntary, improperly relied on statements by the court conducting the plea hearing (the trial court) regarding the immigration consequences of Defendant's plea. We hold that judicial statements made during the plea colloquy about the immigration consequences of a plea do not cure counsel's deficient representation and should only be given minimal weight in determining whether a defendant has demonstrated prejudice under *Strickland v. Washington*, 466 U.S. 668, 695-98 (1984). Accordingly, we reverse and remand.

**BACKGROUND**

{2}     Defendant pleaded guilty to four counts of aggravated battery with a deadly weapon and one count of driving under the influence. Defendant is a Mexican national and a United States permanent resident. At the plea and disposition hearing, the following exchange took place.

| | |
|---|---|
| Judge: | Counsel, I just noticed the place of birth on this form. Is there an immigration consequence in this case? |
| Counsel: | There will be. [Defendant is] here legal and everything, he has his paper documentation and everything, but more than likely he will have a great consequence on . . . his papers being taken away. |
| Judge: | [Defendant], before I accept the plea and approve it at this point, I want to be sure you understand, as your attorney said, that a conviction will have an [e]ffect on your immigration status and that effect would be deportation, which is now called removal, exclusion from the United States and denial of naturalization under the laws of the United States. Do you understand that, sir? |
| Defendant: | Yes, your Honor. |
| Judge: | Alright then, is it still your desire to enter your plea of guilty, sir? |
| Defendant: | Yes, your Honor. |
| Judge: | Alright, the court then approves that. |

{3}     The district court accepted Defendant's guilty plea, and Defendant was sentenced in accordance with the plea agreement. After serving his sentence with the New Mexico Department of Corrections, Defendant was taken into custody by the United States

Immigration and Customs Enforcement Service (ICE).

**{4}** While in the custody of ICE, Defendant filed a motion for relief from judgment pursuant to Rule 1-060 NMRA and, alternatively, a petition for a writ of habeas corpus. The district court entered an order summarily dismissing and denying Defendant the relief he requested. Defendant filed a motion for reconsideration, a hearing was held where testimony was presented, and the district court entered an order denying Defendant's motion. Defendant appeals.

## DISCUSSION

### I. Jurisdiction

**{5}** We begin by determining whether Defendant's ineffective assistance of counsel claim was properly brought as a motion for relief from judgment under Rule 1-060 or as a petition for writ of habeas corpus under Rule 5-802 NMRA. Consistent with an appeal taken from a denial of a petition for writ of habeas corpus, the district court's order informed Defendant that any appeal was to be taken by filing a petition for writ of certiorari with the Supreme Court. *See* Rule 5-802(H)(2) (requiring a defendant to petition for certiorari to our Supreme Court in order to obtain review of a district court's denial of a writ of habeas corpus). Defendant, instead, filed a direct appeal to this Court.

**{6}** "Because [a d]efendant cannot appeal the denial of a writ of habeas corpus to this Court," we must begin by determining whether this appeal is properly before us. *State v. Barraza*, 2011-NMCA-111, ¶ 12, 267 P.3d 815. "The question of jurisdiction is a controlling consideration that must be resolved before going further in a proceeding and may even be raised by the appellate court on its own motion." *Id.* ¶ 5. We review jurisdictional issues de novo. *See id.*

**{7}** Rule 5-802(A) "governs the procedure for filing a writ of habeas corpus by persons in custody or under restraint for a determination that such custody or restraint is, or will be, in violation of the constitution or laws of the State of New Mexico or of the United States[.]" "[W]here a prisoner ha[s] served his sentence and been released, Rule 1-060(B)(4) [is] the vehicle to seek relief from a criminal judgment claimed to be void." *State v. Tran*, 2009-NMCA-010, ¶ 16, 145 N.M. 487, 200 P.3d 537. Thus, whether a petition for writ of habeas corpus or a Rule 1-060(B)(4) motion is the appropriate mechanism for seeking relief depends on whether the defendant was "in custody" at the time the petition or motion was filed. *See Tran*, 2009-NMCA-010, ¶ 15. In this case, because the district court appears to have treated Defendant's petition as one for a writ of habeas corpus, we must determine whether, when Defendant was in the custody of ICE, he was "in custody" for purposes of habeas corpus. By this inquiry, we will determine whether we have jurisdiction to consider Defendant's appeal.

**{8}** The question—what is the appropriate procedural mechanism for someone to use

3

while in the custody of ICE in order to challenge his or her conviction—is an issue of first impression in New Mexico.[1]  Accordingly, we turn to federal habeas corpus jurisprudence for guidance.  In *Maleng v. Cook*, 490 U.S. 488, 492 (1989), the United States Supreme Court stated that "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it."  Federal circuit courts have relied on *Maleng* in determining that "one held in immigration detention is not 'in custody' for the purpose of challenging a state conviction[.]" *Ogunwomoju v. United States*, 512 F.3d 69, 75 (2d Cir. 2008); *see Resendiz v. Kovensky*, 416 F.3d 952, 956-58 (9th Cir. 2005), *abrogated on other grounds as recognized by Chaidez v. United States*, ___ U.S. ___, 130 S. Ct. 1103 (2013); *Broomes v. Ashcroft*, 358 F.3d 1251, 1254 (10th Cir. 2004), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010); *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004); *Kandiel v. United States*, 964 F.2d 794, 796 (8th Cir. 1992).

**{9}**     We note that the United States Supreme Court's more recent opinion in *Padilla* may call into question the characterization of deportation as a collateral consequence.  In *Padilla*, the Supreme Court questioned the distinction between direct and collateral consequences in defining "the scope of constitutionally 'reasonable professional assistance.' " *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1481.  In doing so, the Supreme Court declined to characterize deportation as either a direct or collateral consequence, stating that it was "uniquely difficult" to do so "because of [deportation's] close connection to the criminal process[.]" *Id.* at ___, 130 S. Ct. at 1481-82.  The Supreme Court concluded that "[t]he collateral versus direct distinction [was] ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation." *Id.* at ___, 130 S. Ct. at 1482.

**{10}**     We note, however, that the definition of "collateral consequences" in one context is not necessarily the same as that in another context.  And *Padilla* did not address the issue of collateral versus direct consequences with respect to the "in custody" requirement for federal habeas jurisdiction.  Moreover, we note that, following *Padilla*, federal district courts have largely continued to hold that removal proceedings do not satisfy the "in custody" requirement for filing a petition for writ of habeas corpus even where the removal proceedings include detention by immigration authorities. *See Fenton v. Ryan*, No. 11-2303, 2011 WL 3515376, at *2 (E.D. Pa. Aug. 11, 2011) (mem.) (holding that *Padilla* did not alter the custody requirement and that a petitioner is not "in custody" after completing his sentence merely because he faces deportation); *United States v. Krboyan*, No. CV-F-10-2016 OWW, 2010 WL 5477692, at *5 (E.D. Cal. Dec. 30, 2010) (recognizing a shared view,

---

[1]  We note that in *Tran*, 2009-NMCA-010, ¶ 17, this Court concluded that a Rule 1-060(B)(4) motion was the correct procedural mechanism for the defendant to request relief. In *Tran*, however, unlike this case, the issue of the defendant's custodial status appears not to have been in dispute; as such, the custodial-status issue was not discussed or considered by this Court.

among courts that have considered the issue, that "the collateral immigration consequences of a petitioner's conviction are not sufficient to satisfy the 'in custody' requirement of [habeas corpus], even when those consequences include detention by immigration authorities"); *Walker v. Holder*, No. 10-10802-RWZ, 2010 WL 2105884, at \*1 (D. Mass. May 24, 2010) (holding that the petitioner, having previously served his criminal sentence and who was being held as an immigration detainee, was not 'in custody' for purposes of habeas corpus). *But see Rodriguez v. United States*, No. 1:10-CV-23718-WKW [WO], 2011 WL 3419614, at \*5-6 (mem. & order) (S.D. Fla. Aug. 4, 2011) (holding that, after *Padilla*, a petitioner who had fully served her sentence was in custody because she faced deportation).

**{11}** We find *Fenton*, *Krboyan*, and *Walker* to be persuasive authority on this issue. Accordingly, we conclude that the proper procedural mechanism for a defendant to challenge his underlying criminal conviction when in the custody of ICE is to file a Rule 1-060(B)(4) motion. We therefore conclude that this Court has jurisdiction to hear Defendant's appeal.

## II.     Mootness

**{12}** The State asserts that this Court should decline to hear Defendant's appeal because the issue may be moot. The State relies on *Republican Party of New Mexico v. New Mexico Taxation & Revenue Department*, 2012-NMSC-026, ¶ 10, 283 P.3d 853, to argue that Defendant's removal from the United States moots his appeal. *See id.* (stating the general rule that the appellate courts do not decide moot cases).

**{13}** "An appeal is moot when there is no actual controversy and when no actual relief can be granted to the appellant." *State v. Wilson*, 2005-NMCA-130, ¶ 14, 138 N.M. 551, 123 P.3d 784, *aff'd*, 2006-NMSC-037, 140 N.M. 218, 141 P.3d 1272. While "[a] reviewing court generally does not decide academic or moot questions[,]" *Crutchfield v. New Mexico Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 36, 137 N.M. 26, 106 P.3d 1273, "[a]ppellate courts review criminal convictions even after a defendant's term of incarceration ends because of the continuing collateral consequences of a conviction, such as mandatory sentence increases for subsequent offenses, limitations on eligibility for certain types of employment, and voting restrictions." *State v. Sergio B.*, 2002-NMCA-070, ¶ 10, 132 N.M. 375, 48 P.3d 764.

**{14}** Defendant contends that if permitted to withdraw his plea, he will be eligible to file a motion to reopen his immigration proceedings and request that the attorney general exercise his discretion to parole Defendant back into the United States to face trial. The Sixth Circuit Court of Appeals has held that the "contention that [a defendant's] conviction might affect the [a]ttorney [g]eneral's discretionary decision to allow him back in the country . . . satisfies whatever minimal collateral consequence that [a defendant] might be required to show in order for this court to retain jurisdiction over his claim." *United States v. Ashraf*, 628 F.3d 813, 822 (6th Cir. 2011); *see also Garcia-Flores v. Gonzales*, 477 F.3d 439, 441 n.1 (6th Cir. 2007) (recognizing that "removal of an alien . . . does not moot a

pending appeal" (omission in original) (internal quotation marks and citation omitted)); *Swaby v. Ashcroft*, 357 F.3d 156, 160 (2d Cir. 2004); *Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378, 382-85 (3d Cir. 2001) (same); *United States v. Marsh*, 747 F.2d 7, 9 n.2 (1st Cir. 1984) (holding that because deported defendants' narcotics convictions might prevent their reentry into the country, the appeals were not moot).

**{15}** Because withdrawal of his guilty plea may have future consequences on Defendant's ability to reenter the United States, we conclude that his deportation on January 28, 2012, does not render this appeal moot. We turn to the merits of Defendant's appeal.

### III. Ineffective Assistance of Counsel

**{16}** Defendant contends that the district court erred in denying his motion to withdraw his guilty plea, based on his counsel's alleged failure to inform Defendant about the immigration consequences of entering his plea. "A motion to withdraw a guilty plea is addressed to the sound discretion of the trial court, and we review the trial court's denial of such a motion only for abuse of discretion." *State v. Carlos*, 2006-NMCA-141, ¶ 9, 140 N.M. 688, 147 P.3d 897. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). An abuse of discretion may also occur when the district court "exercises its discretion based on a misunderstanding of the law." *State v. Sotelo*, 2013-NMCA-028, ¶ 37, 296 P.3d 1232, *cert. denied*, 2013-NMCERT-001, 299 P.3d 863. In the context of a guilty plea,

> a trial court abuses its discretion when it acts unfairly or arbitrarily, or commits manifest error by accepting a plea that is not knowingly and voluntarily given. Where, as here, a defendant is represented by an attorney during the plea process and enters a plea upon the advice of that attorney, the voluntariness and intelligence of the defendant's plea generally depends on whether the attorney rendered ineffective assistance in counseling the plea.

*State v. Barnett*, 1998-NMCA-105, ¶ 12, 125 N.M. 739, 965 P.2d 323 (citation omitted). To prove ineffective assistance of counsel, Defendant must show (1) that counsel's performance fell below that of a reasonably competent attorney, and (2) that the defendant was prejudiced by the deficient performance. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. "We afford de novo review of mixed questions of law and fact concerning the ineffective assistance of counsel." *Barnett*, 1998-NMCA-105, ¶ 13.

### A. Deficient Representation

**{17}** Our New Mexico Supreme Court has clearly articulated what constitutes effective assistance of counsel with respect to advising a criminal defendant of the immigration consequences of his or her plea. In *Paredez*, our Supreme Court held that "criminal defense attorneys are obligated to determine the immigration status of their clients. If a client is a

6

non-citizen, the attorney must advise that client of the specific immigration consequences of pleading guilty, including whether deportation would be virtually certain." 2004-NMSC-036, ¶ 19. In so holding, our Supreme Court agreed "with those jurisdictions that have held that an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is . . . objectively unreasonable" and went "one step further" in concluding that "an attorney's non-advice to an alien defendant on the immigration consequences of a guilty plea would also be deficient performance." *Id.* ¶¶ 15-16 (internal quotation marks and citation omitted). According to our Supreme Court, advice that a defendant "could" or "might" be deported is also inadequate, as such advice is "incomplete and therefore inaccurate" because " '[s]tating that a person 'may' be subject to deportation implies there is some chance, potentially a good chance, that the person will not be deported.' " *Id.* ¶ 15 (quoting *Gonzalez v. State*, 83 P.3d 921, 925 (Or. Ct. App. 2004)). This Court has since interpreted *Paredez* as requiring "a definite prediction as to the likelihood of deportation based on the crimes to which a defendant intends to plead and the crimes listed in federal law for which a defendant can be deported." *Carlos*, 2006-NMCA-141, ¶ 14.

**{18}** Six years after our Supreme Court's holding in *Paredez*, the United States Supreme Court in *Padilla* "similarly held that 'counsel must inform her client whether his plea carries a risk of deportation.' " *State v. Ramirez*, 2012-NMCA-057, ¶ 4, 278 P.3d 569 (quoting *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1486), *cert. granted*, 2012-NMCERT-006, 294 P.3d 1244. The United States Supreme Court's holding, while similar in nature to *Paredez*, was not as broad on the issue of what constitutes deficient representation. Rather, the United States Supreme Court held that "when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear"; however, "[w]hen the law is not succinct and straightforward . . . , a criminal defense attorney *need do no more* than advise a non[-]citizen client that pending criminal charges *may* carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1483 (emphasis added). We note that our Supreme Court's opinion in *Paredez* contains no such limitation. We further note that, to the extent there are distinctions to be drawn between the rights provided by the New Mexico Supreme Court in *Paredez* and the rights articulated by the United States Supreme Court in *Padilla*, this Court is bound by the "applicable precedents of [the New Mexico] Supreme Court." *Carlos*, 2006-NMCA-141, ¶ 17 (internal quotation marks and citation omitted).

**B.     Prejudice**

**1.     Demonstrating Prejudice in Cases Involving Immigration Issues**

**{19}** This Court has previously recognized that "[t]here are no mechanical rules for determining prejudice." *Id.* ¶ 20 (internal quotation marks and citation omitted); *see also Strickland*, 466 U.S. at 696 (stating that "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged"). Instead, "the question whether a given defendant has made the requisite [prejudice] showing will turn on the facts of a particular case." *Roe v. Flores-Ortega*, 528 U.S. 470, 485 (2000). This Court has previously considered such factors as "pre-conviction statements or actions indicating

the defendant's preference to plead or to go to trial" and "the strength of the evidence against the defendant[.]" *State v. Edwards*, 2007-NMCA-043, ¶ 35, 141 N.M. 491, 157 P.3d 56. We have also considered a defendant's testimony about his connection to the United States. *See Carlos*, 2006-NMCA-141, ¶ 21 ("[The d]efendant's testimony that he has lived in the United States virtually his whole life, having been brought to [t]his country right after he was born, may have been an important factor in his decision whether to enter a plea."). We are not limited, however, to these considerations in assessing prejudice. *See Edwards*, 2007-NMCA-043, ¶ 36 (noting that our Supreme Court "did not limit the types of additional evidence a defendant may provide in order to establish what he or she would have done given the appropriate advice prior to entering a plea").

**{20}** While *Padilla* was not as broad as *Paredez* in its analysis of what constitutes deficient representation, the United States Supreme Court appears to have taken a broad approach to how a defendant can demonstrate prejudice. *Padilla* states that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1485. This "rational under the circumstances" standard has been heralded as being "much broader and allow[ing] for consideration of a different type of risk analysis by a defendant" as compared with traditional analyses of prejudice in the context of ineffective assistance of counsel claims. Jenny Roberts, *Proving Prejudice, Post-Padilla*, 54 How. L.J. 693, 713 (2011).

**{21}** Given this arguably broader framework permitted by *Padilla*, some scholars have advocated incorporating considerations into the prejudice analysis that more fully reflect the impact that accurate advice regarding immigration consequences can have on a decision to plead. *See, e.g.*, Roberts, *supra*, at 722 ("It is critical to integrate into the prejudice inquiry these realities of plea bargaining, which include negotiating over both charges and sentence, and the effect of these negotiations on a defendant's decision-making process."). Such an approach acknowledges that

> [i]f full information about required matters—which now includes automatic deportation . . .—would lead a defendant to reject the plea, three things could follow: (1) he could go to trial; (2) his attorney could attempt to re-negotiate the plea for one that either avoided imposition of the consequence or lowered the charge and/or sentence in recognition of the fact that deportation . . . would follow the conviction; or (3) assuming the plea did not include a sentence bargain, his attorney could use the additional consequence in post-plea sentencing advocacy before the judge.

Roberts, *supra*, at 722-23. Owing to the impact that accurate immigration advice may have on a defendant's decision-making during the plea bargain process, ineffective assistance claims that arise in this context require courts to analyze factors that differ from those that pertain to non-immigration-related ineffective assistance claims. *See* Roberts, *supra*, at 737 (asserting that "[i]n failure-to-warn cases, [the strength of the evidence] should not weigh

as heavily[,] . . . because the relevant initial inquiry is simply whether, given fully accurate information about the collateral consequence, it is reasonably probable that the defendant would have rejected the plea offer"); *State v. Sandoval*, 249 P.3d 1015, 1022 (Wash. 2011) (en banc) (concluding that, in light of deportation consequences to someone who had earned permanent residency in this country and made it his home, it would be "rational" for a defendant to "take his chances at trial" even though he "would have risked a longer prison term by going to trial"); *see also United States v. Kwan*, 407 F.3d 1005, 1017 (9th Cir. 2005) (determining that the defendant had demonstrated that he was prejudiced by his counsel's ineffectiveness where his counsel failed to advise him of the immigration consequences of a plea bargain), *abrogated on other grounds by Padilla*, 559 U.S. 356, 130 S. Ct. 1473. Thus, under this approach, a defendant could demonstrate prejudice by submitting evidence, for instance, that a different plea could have been negotiated that would have avoided automatic deportation, even if that plea would have resulted in a conviction of a crime requiring a longer period of incarceration. *See* Vivian Chang, Note, *Where Do We Go From Here: Plea Colloquy Warnings and Immigration Consequences Post-Padilla*, 45 U. Mich. J.L. Reform 189, 194 (2011) (recognizing that "non-citizen defendants may be interested in serving longer sentences in order to avoid adverse immigration consequences").

**{22}** The broader, inclusive prejudice analysis described in the preceding paragraphs is not inconsistent with existing New Mexico case law. Our Supreme Court has recognized that "[d]eportation can often be the harshest consequence of a non-citizen criminal defendant's guilty plea, so that in many misdemeanor and low-level felony cases . . . [he or she] is usually much more concerned about immigration consequences than about the term of imprisonment." *Paredez*, 2004-NMSC-036, ¶ 18 (omission and alteration in original) (internal quotation marks and citation omitted). Also, in *Paredez*, our Supreme Court held that for a defendant to demonstrate prejudice in the context of immigration, a defendant must show "he would not have entered into the plea agreement if he had been given constitutionally adequate advice about the effect that his guilty plea would have on his immigration status." *Id.* ¶ 20 (internal quotation marks and citation omitted); *see Edwards*, 2007-NMCA-043, ¶ 34 (noting that "a defendant who was convicted on a plea is not required to prove that a trial would have resulted in acquittal" (alteration, internal quotation marks, and citation omitted)). Thus, similar to the United States Supreme Court's approach in *Padilla*, New Mexico courts appear to approve implementing a broad approach to assessing prejudice in the context of immigration.

## 2. A Trial Court's Warnings Regarding Immigration Consequences During the Plea Colloquy

**{23}** In the present case, in determining prejudice, this Court must determine what weight, if any, should be given to the trial court advising Defendant during the plea colloquy that he would be deported. The district court entered an order accepting Defendant's allegations that his counsel had failed to inform him of the immigration consequences of his plea, but concluding that because the trial court "itself admonished . . . [D]efendant that his plea and conviction in this case would surely result in his being deported[,]" and Defendant

9

"personally told the [trial c]ourt that he understood that he would be deported[,]" Defendant's plea was "knowing, intelligent[,] and voluntary." Thus, the district court appears to have accepted Defendant's allegations that he was not informed by his counsel of the immigration consequences of his plea. Because failure to inform a defendant about the immigration consequences of his plea is sufficient to establish the first prong of ineffective assistance of counsel under *Paredez*, we limit our review to the district court's reliance on the trial court's advice to Defendant in deciding that Defendant had not demonstrated prejudice.[2] Because our appellate courts have not previously addressed this issue, we turn to authority from other jurisdictions to guide our decision.

**{24}** We note that some courts have viewed a district court's advice to counsel during a plea colloquy as "curing" counsel's deficient representation and precluding a showing of prejudice even where the court's warnings were equivocal. *See, e.g.*, *State v. Martinez*, 729 S.E.2d 390, 392 (Ga. 2012) ("A trial court's plea colloquy warnings of adverse immigration consequences, especially where . . . the defendant affirmatively acknowledge[d] his understanding that he is certain or almost certain to face deportation, generally shows that the defendant cannot demonstrate prejudice or that any prejudice was cured, regardless of whether plea counsel had previously given affirmative misadvice or failed to give any advice."); *Mendoza v. United States*, 774 F. Supp. 2d 791, 799 (E.D. Va. 2011) (stating, in dicta, that "[the] petitioner's ineffective assistance of counsel claim flatly fails on the prejudice prong" because "[the] petitioner was explicitly advised in the course of the . . . colloquy that her guilty plea would render her subject to deportation and [she] acknowledged, under oath, that she understood this possible consequence"); *see also De La Rosa v. United States*, Nos. 09-Cv-22646-COHN, 08-Cr-20685-COHN, 2012 WL 4466533, at \*8 (S.D. Fla. Aug. 17, 2012) (holding that, because the court specifically advised the movant that his plea *could* lead to his removal from the United States, "the [c]ourt cured any error due to counsel's alleged misadvice and [the] movant's plea was voluntarily entered with full knowledge of its possible deportation consequences"); *Amreya v. United States*, Nos. 4:10-CV-503-A, 4:08-CR-033-A, 2010 WL 4629996, at \*5 (N.D. Tex. Nov. 8, 2010) (holding that "the record conclusively demonstrates a lack of prejudice" where the court had "specifically advised [the] movant that an adjudication of guilt *could* result in deportation" (emphasis added) (alteration, internal quotation marks, and citation omitted)). Generally, courts that view the district court's colloquy as "curing" counsel's ineffectiveness and precluding prejudice therefrom appear to rely on the importance of sworn statements in open

---

[2] While the State argues that Defendant did not meet his burden of establishing a prima facie showing of ineffective assistance of counsel under *Tran*, we do not address this argument because the district court permitted Defendant to present testimony at the hearing on the motion to reconsider. *See Tran*, 2009-NMCA-010, ¶ 23 (indicating that a prima facie showing of ineffective assistance of counsel entitles a defendant to an evidentiary hearing). Following the testimony, the district court entered an order denying Defendant's motion for reconsideration based on the reasons set forth in the original order denying Defendant's request for relief.

court. *See, e.g.*, *De La Rosa*, 2012 WL 4466533, at *6 ("[A] defendant's sworn answers during a plea colloquy must mean something" and they "constitute a formidable barrier in any subsequent collateral proceedings." (internal quotation marks and citation omitted)); *see also* Danielle M. Lang, Note, *Padilla v. Kentucky: The Effect of Plea Colloquy Warnings on Defendants' Ability to Bring Successful Padilla Claims*, 121 Yale L.J. 944, 983 (2012) (stating that most courts holding that a defendant could not demonstrate prejudice in light of court advice during a plea colloquy "bolstered their no-prejudice holdings with language emphasizing the importance of sworn statements in open court").

**{25}** To the contrary, some courts have held that a trial court's advice during the plea colloquy, while relevant, cannot "cure" a counsel's inadequate representation. *See Hernandez v. State*, __ So. 3d __, 2012 WL 5869660, at *4 (Fla. Nov. 21, 2012) (stating that "a colloquy containing an equivocal warning from the trial court and an acknowledgment from the defendant contributes to the totality of the circumstances by providing evidence that the defendant is aware of the possibility that a plea could affect his immigration status" but it "cannot, by itself, remove prejudice resulting from counsel's deficiency"); *Commonwealth v. Clarke*, 949 N.E.2d 892, 907 n.20 (2011) (stating that, while a deportation warning was given to the defendant, "the receipt of such warnings is not an adequate substitute for defense counsel's professional obligation to advise her client of the likelihood of specific and dire immigration consequences that might arise from such a plea," but "it may be relevant to the prejudice prong"), *abrogated on other grounds by Chaidez*, __ U.S. __, 133 S. Ct. 1103; *People v. Garcia*, 907 N.Y.S.2d 398, 406-07 (Sup. Ct. 2010) ("[W]here . . . [the] defendant is found in fact to have been misled by bad advice from a so-called retained specialist and by a lack of advice from his defense attorney, the [c]ourt's general [deportation] warning[s] will not automatically cure counsel's failure nor erase the consequent prejudice."); *see also* Lang, *supra*, at 978-79 (noting that courts that did not allow plea colloquy warnings to bar a finding of prejudice "focused on the holding in *Padilla* that effective assistance requires not only a blanket warning of possible immigration consequences, but also, where the deportation consequence is clear, specific advice on the particular immigration consequences of the plea").

**{26}** Given that our Supreme Court's holding in *Paredez* requires "a definite prediction as to the likelihood of deportation[,]" *Carlos*, 2006-NMCA-141, ¶ 14, we agree with those courts that have held an equivocal warning by the trial court to be insufficient to cure counsel's deficient representation. However, even where the trial court's warning is unequivocal, as it was here, we do not rely on those cases that hold that a trial court's warning can cure counsel's deficient representation. As our Supreme Court noted in *Paredez*, "a sufficient advisement from the trial court regarding the immigration consequences of a defendant's plea does not entail that the defendant has received effective assistance of counsel *in evaluating* or *responding to* such advisements." 2004-NMSC-036, ¶ 12 (emphasis added) (alteration, internal quotation marks, and citation omitted). Thus, we hold that a court's warning or advisement to a defendant regarding possible immigration consequences of accepting a plea is never, by itself, sufficient to cure the prejudice that results from ineffective assistance of counsel in that regard.

11

**{27}**     "Effective assistance of counsel is necessary during plea negotiations because the most important decision for a defendant in a criminal case is generally whether to contest a charge or enter into a plea agreement." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032; *see also Padilla*, 559 U.S. at ___, 130 S. Ct. at 1486 (recognizing the importance of negotiation of a plea bargain as "a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel"). The right to effective assistance of counsel amounts to more than simply relaying information. *See Strickland*, 466 U.S. at 688 (recognizing that "[r]epresentation of a criminal defendant entails certain basic duties[,]" including the "overarching duty to advocate the defendant's cause[,] . . . to consult with the defendant on important decisions[,] and to keep the defendant informed"). "The role of defense counsel is to investigate, advise, and counsel her client through every phase of the criminal process. The court, as a neutral arbiter, cannot fulfill this role." Lang, *supra*, at 996. "Even where warnings are more specific, judges, given their position, cannot gauge defendants' priorities, counsel defendants on how to proceed, or use the information strategically in negotiating pleas." *Id.* at 988. A defendant who has been "advised" of the immigration consequences of his plea by the trial court during the plea colloquy has not been provided the same assistance of counsel as an attorney who has represented a client with knowledge that the defendant faced possible deportation. As the United States Supreme Court acknowledged in *Padilla*,

> informed consideration of possible deportation can only benefit both the [s]tate and non[-]citizen defendants during the plea-bargaining process. By bringing deportation consequences into this process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties. As in this case, a criminal episode may provide the basis for multiple charges, of which only a subset mandate deportation following conviction. Counsel who possess the most rudimentary understanding of the deportation consequences of a particular criminal offense may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence. At the same time, the threat of deportation may provide the defendant with a powerful incentive to plead guilty to an offense that does not mandate that penalty in exchange for a dismissal of a charge that does.

559 U.S. at ___, 130 S. Ct. at 1486. Because a defendant whose attorney has not advised him of the immigration consequences of his plea has likely not advocated for a plea aimed at avoiding automatic deportation, the trial court's advice to a defendant that he may or will be deported cannot cure counsel's deficient representation.

**{28}**     Moreover, we note concerns with the efficacy of immigration warnings given by a trial court. "[A] nervous defendant taking a plea in front of a criminal judge will rarely be able to meaningfully process the many formalized warnings included in the plea colloquy.

12

While these warnings may be administered in a way that is supportive of the spirit of *Padilla*, they are no replacement for meaningful advice by counsel." Heidi Altman, *Prosecuting Post-Padilla: State Interests and the Pursuit of Justice for Non[-]citizen Defendants*, 101 Geo. L.J. 1, 21 (2012) (footnote omitted); Chang, *supra*, at 216 (noting "that defendants do not currently pay attention to the rote nature of warnings at plea colloquy, and that non-citizen defendants therefore would not actually be put on notice of the immigration consequences they might face"). While we do not go so far as to hold that such warnings are irrelevant to a prejudice analysis, given the formalistic nature of the warnings, we caution that such warnings should be given very little weight when considering prejudice where the defendant was not given the opportunity to speak with counsel between receiving the warnings and entering his plea.[3]

**{29}** In an effort to attempt to lessen claims of ineffective assistance of counsel such as the one now before this Court, in cases in which the district court is presented with a guilty or nolo contendere plea, we recommend that the district court inquire of both the defendant and the defendant's lawyer the extent to which the immigration consequences of accepting the plea were discussed (1) before the defendant signed his plea agreement, (2) before the defendant entered his plea in court, and (3) before sentencing.

**{30}** In the present case, the district court appears to have placed significant weight on the trial court's immigration warnings to Defendant. For the reasons articulated earlier, we conclude that placing significant weight on the trial court's warnings was improper where Defendant was not provided the opportunity to consult with counsel or consider what other options may exist that would permit him to avoid deportation. We therefore remand to the district court for further proceedings.[4] On remand, the district court may hear evidence and

---

[3] To the extent the State argues that the plea and disposition agreement signed by Defendant stated that it "may have an effect upon [his] immigration or naturalization status," neither the equivocal nature of the warning nor the formalistic nature of its delivery provide support for it being given significant weight in determining prejudice.

[4] While the State advocates for this Court to conclude that Defendant did not establish prejudice because he "made no showing that the charges to which he pleaded guilty were not based on strong evidence[,]" the strength of the evidence is but one factor to be considered in determining prejudice. Although our courts have recognized "a direct relationship between the strength of the case against a defendant and the likelihood that he or she will plead guilty or no contest[,]" *Edwards*, 2007-NMCA-043, ¶ 35 (internal quotation marks and citation omitted), when viewed in light of our acknowledgment that immigration consequences may often be the overriding concern of a criminal defendant, the strength of the evidence against a defendant is less indicative of whether the defendant may have taken a chance at trial. *See* Roberts, *supra*, at 737 (asserting that "[i]n failure-to-warn cases, [the strength of the evidence] should not weigh as heavily[,] . . . because the relevant initial inquiry is simply whether, given fully accurate information about the collateral consequence,

reconsider both prongs of Defendant's ineffective assistance of counsel claim. Given that objective evidence may be sparse in this type of case, *see Carlos*, 2006-NMCA-141, ¶ 21, by this Court's broadening of the approach in analyzing prejudice, the district court will have more to draw from than Defendant's self-serving statements in determining whether he was prejudiced by counsel's failure to warn regarding the immigration consequences of his plea. *See Patterson*, 2001-NMSC-013, ¶ 29 ("Because courts are reluctant to rely solely on the self-serving statements of defendants, which are often made after they have been convicted and sentenced, a defendant is generally required to adduce additional evidence to prove that there is a reasonable probability that he or she would have gone to trial."). On remand, the district court should consider the various considerations discussed herein, in light of the harsh and drastic consequences that deportation poses.

**CONCLUSION**

**{31}** The district court's order denying Defendant's motion for reconsideration is reversed. This matter is remanded to the district court for further proceedings consistent with this Opinion.

**{32}   IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for *State v. Favela*, No. 32,044**

**APPEAL AND ERROR**
Prejudicial Error
Remand
Standard of Review

**ATTORNEYS**

_____

it is reasonably probable that the defendant would have rejected the plea offer"); *id.* at 719 (noting that it may be "rational" for a defendant "to take his chances at trial, however slim the likelihood of acquittal, . . . because it was the only route to avoiding deportation").

Effective Assistance of Counsel

**CONSTITUTIONAL LAW**
Mootness

**CRIMINAL PROCEDURE**
Plea and Plea Bargaining
Prejudice
Writ of Habeas Corpus

**FEDERAL LAW**
Immigration

**JUDGMENT**
Post Judgment Relief

**JURISDICTION**
Appellate Jurisdiction