This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                   **NO. 33,193**

**IRVIN RAMIREZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DONA ANA COUNTY**
Jerald Alan Valentine, District Judge

Bennett J. Baur, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Appellee

## DECISION

**CHÁVEZ, Justice.**

{1}    Irvin Ramirez was convicted of several charges stemming from an armed robbery and murder.  On direct appeal, Ramirez argues that (1) errors in the jury instructions for his felony murder charge constituted fundamental error, (2) errors in the jury instructions for receipt of stolen property constituted fundamental error, (3) he received ineffective assistance of counsel, (4) his double jeopardy rights were violated by his convictions for both felony murder and armed robbery, (5) the trial court erred in admitting a lab report and in allowing testimony from a private investigator who had been employed by Ramirez's family, and (6) the evidence was insufficient to support his convictions.  We agree that Ramirez's convictions for felony murder and armed robbery constitute double jeopardy, and we vacate his conviction for armed robbery.  We reject his other arguments, and therefore affirm his remaining convictions.

**BACKGROUND**

{2}    On January 4, 2010, Adam Espinoza began driving from Texas to California, where he planned to move.  That night, Espinoza stopped to sleep in his car at a highway rest stop in Anthony, New Mexico.  Ramirez and two associates, Javier Orozco and Jorge Murillo, attempted to rob Espinoza.  According to Orozco's testimony, he and Ramirez approached Espinoza's car with a rifle and demanded

Espinoza's money. Espinoza refused, and Ramirez fatally shot him in the head, arm, and abdomen.

{3} Ramirez and his associates then stole items from the car, including Espinoza's cell phone, iPod, speakers, laptop, Playstation and games, television, DVDs, and musical instruments, and sold them for cash. They hid Espinoza's body in the trunk of his car, which they burned and abandoned.

{4} Ramirez was convicted of felony murder, armed robbery, conspiracy to commit armed robbery, tampering with evidence, arson causing damage of more than $500, and receiving stolen property worth more than $2,500. He appealed directly to this Court pursuant to Rule 12-102(A)(1) NMRA.

**DISCUSSION**

**A.    THE FELONY MURDER INSTRUCTION DID NOT CREATE FUNDAMENTAL ERROR**

{5} Ramirez alleges, and the State agrees, that the jury was given an improper instruction for the felony murder charge. Ramirez did not object to the jury instructions during trial, so this Court reviews for fundamental error pursuant to Rule 12-216(B)(2) NMRA. "Fundamental error may be resorted to if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Osborne*, 1991-NMSC-032, ¶ 41,

3

111 N.M. 654, 808 P.2d 624 (internal quotation marks and citations omitted). "With regard to jury instructions, fundamental error occurs when, because an erroneous instruction was given, a court has no way of knowing whether the conviction was or was not based on the lack of the essential element." *State v. Swick*, 2012-NMSC-018, ¶ 46, 279 P.3d 747.

{6}   The jury was given UJI 14-202 NMRA, the felony murder uniform jury instruction, which was appropriate. However, the first element of the instruction was stated incorrectly. Ramirez argues that the trial court should have told the jury that in order for it to convict, the State must have proved that "[t]he defendant Irvin Ramirez committed the crime of armed robbery under circumstances or in a manner dangerous to human life" as required by UJI 14-202. Instead, the trial court instructed the jury that the State needed to prove that "[t]he defendant Irvin Ramirez committed the crime of murder." The remainder of the instruction was given properly; the trial court instructed the jury that it would also have to find that Ramirez "caused the death of Adam Espinoza during the commission of armed robbery" and "intended to kill or knew that his acts created a strong probability of death or great bodily harm."

{7}   There are two differences between the instruction that was given and the instruction that Ramirez advocates. The first error was the substitution of the word

4

"murder" for "armed robbery." The second error was the omission of the phrase "under circumstances or in a manner dangerous to human life." Neither mistake constitutes fundamental error under New Mexico law. In addition, we note that the jury received the correct felony murder instruction when it was instructed that it could find Ramirez guilty as an accomplice. We are satisfied that the jury could not have been confused by the instructions and, as we explain below, we conclude that the jury found all essential elements of the crime beyond a reasonable doubt.

**1.     The jury found beyond a reasonable doubt that Ramirez committed armed robbery**

{8}     Ramirez argues that the first error, the substitution of the word "murder" for "armed robbery," meant that the jury was not required to find that Ramirez committed armed robbery, which was an essential element of the felony murder charge. However, the jury convicted Ramirez of a separate armed robbery charge, so there is no question that the jury found beyond a reasonable doubt that Ramirez committed the predicate felony. In addition, the subsequent elements of the felony murder charge required the jury to find that Ramirez "caused the death of Adam Espinoza during the commission of armed robbery." By convicting Ramirez of both felony murder and armed robbery, the jury clearly found that Ramirez committed the predicate armed robbery. There is no reason to believe that the instruction confused the jury; the

5

instruction as given made sense, and there would have been no reason for the jury to believe that the instruction was incorrect or incomplete.

**2.      The jury necessarily found that the armed robbery was committed under circumstances or in a manner dangerous to human life**

{9}      The second error alleged by Ramirez is the omission of the phrase "under circumstances or in a manner dangerous to human life." UJI 14-202. This Court has previously held that in order to support a felony murder conviction, the predicate felony either must have been a first-degree felony or it "must be inherently dangerous or committed under circumstances that are inherently dangerous." *State v. Harrison*, 1977-NMSC-038, ¶ 14, 90 N.M. 439, 564 P.2d 1321, *superseded on other grounds by* Rule 11-707 NMRA. Our jury instructions now require the phrase "under circumstances or in a manner dangerous to human life" in felony murder cases where the predicate felony is a second-degree felony or lower. UJI 14-202 n.4.

{10}      The predicate felony in this case was armed robbery, which is a second-degree felony on the first offense; it becomes a first-degree felony only on subsequent offenses. NMSA 1978, § 30-16-2 (1973). This was Ramirez's first armed robbery conviction. Therefore, he argues that by omitting the phrase "under circumstances or in a manner dangerous to human life" from the jury instructions, the trial court omitted an essential element of the felony murder charge.

6

**{11}** Omission of an essential element from the jury instructions typically constitutes fundamental error. *Osborne*, 1991-NMSC-032, ¶ 10. However, if the jury's conviction "necessarily includes or amounts to a finding on an element omitted from the jury's instructions . . . the error cannot be said to be fundamental." *State v. Orosco*, 1992-NMSC-006, ¶ 12, 113 N.M. 780, 833 P.2d 1146.

**{12}** *Orosco* was a consolidated appeal by two defendants who had been convicted of criminal sexual contact of a minor (CSCM). *Id.* ¶ 1. This Court had previously held that the unlawfulness of the contact is an essential element in CSCM cases and that the omission of the element is fundamental error. *Osborne*, 1991-NMSC-032, ¶¶ 33, 44. However, the *Orosco* Court distinguished *Osborne* and affirmed both defendants' convictions, even though neither jury had been instructed on unlawfulness. *Orosco*, 1992-NMSC-006, ¶¶ 3, 9, 18. In *Osborne*, there was a genuine question of whether, if the touching had occurred, it had been inappropriate or unlawful. 1991-NMSC-032, ¶ 7 ("Defendant . . . said that while it was possible he might have touched [the victim's] bottom at some point, it would not have been in an inappropriate manner or with an inappropriate intent."). By contrast, the defendants in *Orosco* were accused respectively of fondling a child in the restroom of a bar and touching a victim's genitals over a three-hour period in the defendant's truck. 1992-

7

NMSC-006, ¶ 11. The allegations left no room for the possibility that the touching had been lawful; by convicting, the jury necessarily concluded that the defendants had touched their victims unlawfully. *Id.* ¶¶ 11-12. "In each case, either an unlawful touching occurred or it did not; in each case, the jury determined that it did." *Id.* ¶ 11. Therefore, because there was "no dispute that the [missing] element was established," there was no doubt about guilt and no fundamental error. *Id.* ¶ 12.

{13}     In this case, the jury's convictions of Ramirez for felony murder and armed robbery necessarily included a conclusion that the robbery was committed "under circumstances or in a manner dangerous to human life," as required by UJI 14-202. In order to convict a defendant of armed robbery, a jury must find that the defendant stole property "by use or threatened use of force or violence . . . while armed with a deadly weapon." Section 30-16-2. The jury also specifically found that Ramirez used a firearm during the armed robbery and murder. The flawed instruction still required the jury to find that Ramirez caused Espinoza's death during the commission of the armed robbery. The uncontroverted evidence at trial was that the murder occurred during a robbery at gunpoint at a highway rest stop in the middle of the night. It is hard to imagine how the jury might have concluded that such a crime was *not* dangerous to human life. The jury's determination of Ramirez's guilt "necessarily

includes or amounts to a finding on [the] element omitted from the jury's instructions." *Orosco*, 1992-NMSC-006, ¶ 12. Therefore, we conclude that there was no fundamental error in the felony murder instruction.

**B.    THE INSTRUCTION ON RECEIPT OF STOLEN PROPERTY DID NOT CREATE FUNDAMENTAL ERROR**

**{14}**    Ramirez also challenges his conviction for receiving stolen property worth more than $2,500, contrary to NMSA 1978, § 30-16-11(G) (2006).  Ramirez was also charged with the lesser included offense of receiving stolen property worth more than $500, contrary to Section 30-16-11(F).  The jury was correctly given UJI 14-1650 NMRA for both counts.  However, there was an error in the "step-down instruction," UJI 14-6002 NMRA.

**{15}**    The step-down instruction "should be given immediately preceding the instruction containing the elements of a lesser included offense."  UJI 14-6002 n.1. In this case, the instruction should have read, "If you should have a reasonable doubt as to whether the defendant committed the crime of receiving stolen property over $2,500.00, you must proceed to determine whether the defendant committed the included offense of receiving stolen property over $500.00."  Instead, the trial court substituted the word "arson" for each appearance of the phrase "receiving stolen property."  Apparently neither the trial court nor trial counsel noticed the error.  The

jury convicted Ramirez of the greater charge.

**{16}** Because Ramirez did not object to the instruction as it was given, this Court reviews for fundamental error under Rule 12-216(B)(2) and examines whether the jury would have been confused or misdirected to the point where reversal would be necessary to prevent a miscarriage of justice. *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016.

**{17}** In this case, the jury does not appear to have been confused at all. The jury asked several questions during its deliberations, but it never asked for clarification of the step-down instruction. The erroneous step-down instruction that refers to "arson" is sandwiched between two correct instructions about receiving stolen property, so the error would have been obvious to the jury as it read the instructions. The fact that the jury did not ask about the instruction suggests that it was not confused. The jury may have noticed the error and realized that the instruction meant "receiving stolen property" rather than "arson." Alternatively, the jury may have been convinced from the outset of deliberations that the stolen property was worth more than $2,500, and it might therefore have convicted on the greater charge without considering the lesser. The jury was separately instructed on the nature of the receiving stolen property charge and the three possible verdicts it could return (guilty of the greater charge,

guilty of the lesser charge, or not guilty), so there is no doubt that the jury knew it could consider the lesser offense. In either scenario, there was no serious confusion or misdirection.

{18} This Court is concerned that this type of sloppy error in the jury instructions could get past the State, defense counsel, and the trial court. Nevertheless, the erroneous step-down instruction in this case does not appear to have confused or misdirected the jury, and reversal is not required to prevent a miscarriage of justice.

## C. DEFENSE COUNSEL WAS NOT CONSTITUTIONALLY INEFFECTIVE

{19} In the alternative, Ramirez argues that his attorney at trial was constitutionally ineffective for failing to notice and correct the errors in the jury instructions. "For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (citing *Strickland v. Washington*, 466 U.S. 668, 690, 692 (1984), *superseded on other grounds by* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214). "We refer to the two prongs of this test as the reasonableness prong and the prejudice prong." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 17, 130 N.M. 179, 21 P.3d 1032. The defendant must affirmatively prove both prongs. *State v. Tran*, 2009-

11

NMCA-010, ¶ 20, 145 N.M. 487, 200 P.3d 537 (citing *Strickland*, 466 U.S. at 687).

{20} In this case, there is no dispute that Ramirez's trial counsel was ineffective in failing to object to the errors in the jury instructions. However, Ramirez still must demonstrate that his attorney's errors prejudiced him. In order to make a showing of prejudice, "[a] defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bernal*, 2006-NMSC-050, ¶ 32 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A reasonable probability is more than a mere possibility.

> It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.

*Id.* at 693 (internal citation omitted).

{21} Ramirez's sole statement of the prejudice he suffered is that his attorney's mistakes "resulted in fewer elements needed for conviction and misdirected the jury." A defendant must show a "reasonable probability" that but for the mistake, the outcome would have been different, and Ramirez has not made this showing. In fact, it is hard to imagine how the attorney's errors might have prejudiced Ramirez. As we

12

explained above, the jury found every element required to convict Ramirez, and there is no reason to believe that the jury was confused or misdirected by the jury instructions.

{22} This Court has observed that in rare circumstances, an appellate court may be able to rule on a claim of ineffective assistance of counsel based on the record before it, without further factual development by the trial court. *Garcia v. State*, 2010-NMSC-023, ¶ 29, 148 N.M. 414, 237 P.3d 716. This is one of those rare cases. The errors by Ramirez's counsel simply do not undermine confidence in the outcome of his case. We hold that Ramirez's claim of ineffective assistance of counsel fails on its merits.

**D.  CONVICTIONS FOR BOTH FELONY MURDER AND THE PREDICATE FELONY OF ARMED ROBBERY CONSTITUTE DOUBLE JEOPARDY**

{23} Ramirez was convicted of both armed robbery and felony murder with armed robbery as the predicate felony. This Court has held that a defendant may not be convicted of both felony murder and the predicate felony; if the defendant is convicted of both offenses, it is a violation of his or her right to be free from double jeopardy. *State v. Frazier*, 2007-NMSC-032, ¶¶ 1, 40, 142 N.M. 120, 164 P.3d 1. The trial court must explicitly vacate the lesser conviction. *State v. Garcia*, 2011-NMSC-003, ¶ 39,

149 N.M. 185, 246 P.3d 1057.

**{24}** In this case, the trial court did not impose a sentence for the armed robbery conviction, citing *Frazier*, but it failed to vacate the conviction. Both Ramirez and the State agree that the failure to vacate the armed robbery conviction was error. Under *Garcia*, this constitutes a violation of Ramirez's double jeopardy rights. 2011-NMSC-003, ¶¶ 40-41. We therefore remand to the trial court to vacate Ramirez's conviction for armed robbery.

**E. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING EVIDENCE AGAINST RAMIREZ**

**{25}** Ramirez argues that his convictions should be reversed because of two evidentiary rulings by the trial court. First, Ramirez argues that the trial court erred in admitting into evidence a report by the State's fingerprint expert. Second, Ramirez argues that the trial court should not have allowed the jury to hear testimony by an investigator who worked for Ramirez's previous attorney. Ramirez objected to both rulings at trial, and the issues are preserved for purposes of Rule 12-216.

**{26}** We review a trial court's decision to admit or exclude evidence for abuse of discretion. *State v. Downey*, 2008-NMSC-061, ¶ 24, 145 N.M. 232, 195 P.3d 1244. At trial, Ramirez's attorney objected to the admission of a report by the State's fingerprint expert on the grounds that it was never disclosed to the defense. The trial

14

court held an evidentiary hearing and determined that the State had not failed to disclose the document. At the evidentiary hearing, the State presented testimony from a paralegal in the District Attorney's office that she had disclosed the report to defense counsel and private investigators by email and electronic disclosure. The State also introduced copies of the emails with the report attached. Another witness testified that he had told defense counsel about the conclusions of the fingerprint expert in a pretrial conference. Ramirez called one witness, an investigator for the Public Defender Department, who testified that he did not recall receiving the emails from the District Attorney's office. However, he also admitted that it was possible that he had in fact received the report. Based on the evidence presented in the hearing, the trial court did not abuse its discretion in admitting the report into evidence.

{27}    Ramirez also challenged the trial court's decision to allow the testimony of Chris Stewart, who worked as a private investigator for Ramirez's previous attorney. At trial, Ramirez argued that Stewart's testimony violated attorney-client confidentiality. Ramirez apparently objected (and continues to object) to both Stewart's testimony and Stewart's act of turning over shoes and clothes belonging to Ramirez to the police. However, Stewart testified at the evidentiary hearing not only that the Ramirez family believed that the shoes and clothes would be exculpatory, but

also that they, including Ramirez himself, agreed to turn the items over to the police. There was no evidence presented at the hearing on this issue other than Stewart's testimony. The trial court found that the items that Stewart gave to the State were not intended to be confidential, and therefore Stewart was allowed to testify about them. Given the lack of contrary evidence, this did not constitute an abuse of the trial court's discretion.

**F. THE EVIDENCE WAS SUFFICIENT TO SUPPORT RAMIREZ'S CONVICTIONS**

{28}    Ramirez next asserts that the evidence presented at trial was insufficient to support each of his six convictions. We conclude that Ramirez's arguments are unpersuasive and hold that each conviction was sufficiently supported by the evidence presented at trial.

> The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction. The reviewing court views the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. The question before us as a reviewing court is not whether we would have had a reasonable doubt about guilt but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise.

*State v. Guerra*, 2012-NMSC-027, ¶ 10, 284 P.3d 1076 (alterations omitted) (internal quotation marks and citations omitted). "[W]e evaluate the sufficiency of the

16

evidence under the instructions given," even if they are erroneous. *State v. Ramos*, 2013-NMSC-031, ¶ 30, ___ P.3d ___; *State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930 ("We review Defendant's claim under the erroneous instruction provided to the jury at trial."). "We do not evaluate the sufficiency of the evidence for instructions that were not given to the jury." *Ramos*, 2013-NMSC-031, ¶ 30.

**1.      First-degree murder**

{29}      The jury was presented with alternative jury instructions on the first-degree murder charge—first-degree murder as the principal and as an accessory. We need only determine that one of the two theories is sufficient. *State v. Bahney*, 2012-NMCA-039, ¶ 26, 274 P.3d 134 (holding that where it was not clear whether defendant had been convicted as a principal or as an accessory, it was only necessary to "find sufficient evidence under one of the theories presented to uphold Defendant's convictions," and addressing "each . . . crime[] under the State's theory of accessory liability"). We review Ramirez's conviction for first-degree murder under a theory of accessory liability and conclude that the evidence is sufficient to support Ramirez's conviction.

{30}      The elements of first-degree murder as an accessory, as presented to the jury,

are:

1. The felony of armed robbery was committed under circumstances or in a manner dangerous to human life;

2. The defendant Irvin Ramirez helped, encouraged or caused the felony of armed robbery to be committed;

3. The defendant Irvin Ramirez intended that the armed robbery be committed;

4. During the commission of the felony Adam Espinoza was killed;

5. The defendant Irvin Ramirez helped, encouraged or caused the killing to be committed;

6. The defendant Irvin Ramirez intended the killing to occur or knew that he was helping to create a strong probability of death or great bodily harm;

7. This happened in New Mexico on or between January 4, 2010 and January 6, 2010.

*See* UJI 14-2821 NMRA.

{31} We begin with the armed robbery component of the first element of first-degree murder. The elements of armed robbery, as presented to the jury, are:

1. The defendant took and carried away a computer, a cellular phone, U.S. Currency, a video game system, clothing, musical instruments and an I-Pod [sic], from Adam Espinoza or from his immediate control intending to permanently deprive Adam Espinoza of the property;

18

2.  The defendant was armed with a rifle;

3.  The defendant took the property by force or violence and/or threatened force or violence;

4.  This happened in New Mexico on or between January 4, 2010 and January 6, 2010.

*See* UJI 14-1621 NMRA.  There is sufficient evidence to support each element.

{32}    Regarding the first element of armed robbery, there is sufficient evidence showing that Espinoza's property was permanently taken from him or his immediate control.  Orozco testified that Ramirez had the cell phone and iPod in his possession after the robbery.  The three men later unloaded the remaining property from Espinoza's car.  The jury could reasonably infer that this property included a flat screen TV, a PlayStation 3, games, and DVDs, since these items were later sold, and a clock and clothes, since Orozco kept those in his possession after the robbery.  The jury could also conclude that Espinoza's computer was taken because Espinoza's mother testified that he had his computer with him in his vehicle.  The same is true for the U.S. currency that Espinoza had in his possession.  Based on this evience, it can be inferred that the computer and cash were taken from either the car or Espinoza's person.

{33}    Regarding the second element, there was testimony that Ramirez had a .22

19

caliber rifle in his possession. For the third element, the evidence indicates that Ramirez pointed the rifle at Espinoza and told him to "[b]race yourself," which a reasonable juror could conclude was a threat of violence. Ramirez then shot Espinoza before taking his possessions. This action constitutes a taking by force. Finally, this testimony established that these events took place on January 4, 2010. Therefore, the evidence was sufficient to support the armed robbery component of the first-degree murder charge.

{34} There was clearly sufficient evidence for the jury to conclude that the armed robbery was committed "under circumstances or in a manner dangerous to human life." *See supra* Section A(2). Ramirez pointed a rifle at Espinoza during the robbery, and the dangerous manner of the robbery is self-evident because the incident resulted in Espinoza's death.

{35} The remaining elements of the first-degree murder charge also are satisfied. Ramirez helped commit the felony of armed robbery by taking Espinoza's cell phone and iPod from Espinoza's car and escorting Orozco to the getaway car while armed, satisfying the second element. It was Ramirez's sole, or shared, idea to rob the next person who came to the rest stop, satisfying the third element. Espinoza was killed during the robbery, satisfying the fourth element. Fifth, Ramirez admitted that he

killed Espinoza and bragged to a cell mate in jail that he used a gun for the killing. Sixth, Ramirez told Espinoza to "[b]race yourself" while pointing the rifle at him, suggesting that Ramirez intended to shoot Espinoza. Finally, this testimony established that these events happened in New Mexico on or between January 4, 2010 and January 6, 2010. Therefore, there was sufficient evidence to convict Ramirez of first-degree murder.

**2.      Conspiracy to commit armed robbery**

{36}     The evidence was sufficient to support Ramirez's conviction for conspiracy to commit armed robbery. The elements of conspiracy to commit armed robbery, as presented to the jury, are:

> 1.  The defendant and another person by words or acts agreed together to commit armed robbery;
>
> 2.  The defendant and the other person intended to commit armed robbery;
>
> 3.  This happened in New Mexico on or between January 4, 2010, and January 6, 2010.

*See* UJI 14-2810 NMRA.

{37}     Testimony during trial establishes that the three men, including Ramirez, planned to use a gun (ultimately, Ramirez used a rifle) to "scare [somebody] and ask [him] for his money." This evidence is sufficient to support the first element. Orozco

testified that he, Murillo, and Ramirez "were just there [at the rest stop] and [Murillo and Ramirez] were just saying that the first one that gets there is going to get robbed." Second, from this evidence, a jury could have inferred that Ramirez intended to commit armed robbery. Finally, Orozco and Murillo both testified that Ramirez was present at the scene of the robbery on January 4, 2010. Therefore, there was sufficient evidence to convict Ramirez of conspiracy to commit armed robbery.

**3.      Tampering with evidence**

{38}     The evidence is sufficient to support Ramirez's conviction of tampering with evidence. The elements of tampering with evidence are:

> 1.   The defendant destroyed, changed, hid, or placed Adam Espinoza's body and/or personal property belonging to Adam Espinoza;

> 2.   The defendant intended to prevent the apprehension, prosecution or conviction of Irvin Ramirez;

> 3. This happened in New Mexico on or between January 4, 2010 and January 6, 2010.

*See* UJI 14-2241 NMRA.

{39}     First, Ramirez helped move Espinoza's body from the car's back seat to its trunk, helped transport Espinoza's car and body to the shooting range, and poured gasoline on the back seat of the vehicle. The gasoline was then lit. The vehicle belonged to Espinoza. For these reasons, the first element is satisfied. Second,

22

Murillo testified that "it was decided to . . . get rid of the evidence, so it wouldn't come back to haunt us." Ramirez told Orozco that "there were still bones" in the car, and suggested that they burn the car again. Based on the foregoing evidence, a juror could reasonably find that Ramirez intended to destroy the bones so that they could not be discovered. Finally, testimony at trial established that these events occurred in New Mexico between January 4, 2010, and January 6, 2010. For these reasons, there was sufficient evidence to convict Ramirez of tampering with the evidence.

**4.     Arson**

{40}     The evidence is sufficient to support Ramirez's conviction for arson. The jury was presented with two jury instructions:  arson of property worth more than $500, and arson of property worth more than $2,500. The jury convicted Ramirez of the lesser charge of arson of property worth more than $500. The elements of arson of property worth more than $500 are:

> 1.  The defendant intentionally or maliciously started a fire or caused an explosion;

> 2. He did so with the intent to destroy or damage a vehicle which belonged to another and which had a market value of over $500.00;

> 3. This happened in New Mexico on or between January 4, 2010 and January 6, 2010.

*See* UJI 14-1701 NMRA.

{41}     First, Ramirez poured gasoline on the back seat of the vehicle without being prompted, suggesting that he intended to light the car on fire.  Murillo admitted to lighting the gasoline; however, "[a] person who aids or abets in the commission of a crime is equally culpable as the principal." *State v. Carrasco*, 1997-NMSC-047, ¶ 6, 124 N.M. 64, 946 P.2d 1075.  As a result, there is sufficient evidence to support the first element.  Second, Ramirez demonstrated his intent to destroy the vehicle by participating in the decision to burn it.  Testimony also established that the car was worth more than $500, and it belonged to Espinoza.  Finally, these events occurred in New Mexico between January 4, 2010, and January 6, 2010.  For these reasons, there was sufficient evidence to convict Ramirez of arson.

**5.      Receiving stolen property**

{42}     The evidence is sufficient to support Ramirez's conviction for receiving stolen property.  The elements for receiving stolen property are:

> 1.   The cellular phone, and/or computer, U.S. currency, video game system, clothing, musical instruments, flat screen T.V., and/or I-Pod [sic] had been stolen;
>
> 2.  The defendant disposed of this property;
>
> 3. At the time he disposed of this property, the defendant knew or believed that it had been stolen;
>
> 4.  The property had a market value of over $2,500.00;

    5. This happened in New Mexico on or between January 4, 2010 and January 6, 2010.

*See* UJI 14-1650 NMRA.

**{43}** As noted in the armed robbery analysis, Espinoza's cell phone, iPod, flat-screen TV, PlayStation 3, games, and DVDs, clock, clothes, computer, and currency were all stolen.

**{44}** Regarding the second element, Ramirez disposed of the PlayStation 3, the plasma TV, and the games by instructing Murillo to sell them. Orozco testified that he kept the clock and clothes. Since Ramirez asked Orozco for the proceeds of the BlackBerry that he sold, a jury could reasonably infer that Ramirez controlled which items Orozco kept or sold. Ramirez disposed of the clock and clothes by allowing Orozco to keep them. There was no testimony regarding whether the computer and musical instruments were sold. However, Murillo stated that there were personal items in the car at the time of the theft in addition to the PlayStation 3 and the TV. Orozco testified broadly that the day after unloading the property, Ramirez and Murillo "were selling the stuff to people." A jury could reasonably conclude that the computer and instruments were also sold during these transactions. Element two is satisfied for each item. The third element is satisfied because Ramirez participated in the theft, and therefore he knew that the items were stolen.

{45} For the fourth element, we must determine whether there was sufficient evidence regarding the market value of the stolen property. In determining the value of the stolen items, we look to the market value of the goods. *See State v. Barr*, 1999-NMCA-081, ¶ 30, 127 N.M. 504, 984 P.2d 185 (holding that it was proper to use the victim's testimony to determine that the market value of the stolen goods exceeded $250). Although the jury was not given the definition of "market value," the uniform jury instruction defines "market value" as "the price at which the property could ordinarily be bought or sold at the time of the alleged criminal act." UJI 14-6102 NMRA. We conclude that the testimony presented was sufficient to determine the value of the stolen goods because the State's witnesses, Epinoza's mother and sister, were familiar with the cost of these items. *See State v. Williams*, 1972-NMCA-011, ¶ 2, 83 N.M. 477, 493 P.2d 962 (holding that motel manager who was familiar with stolen items was qualified to testify about their value).

{46} According to the testimony of Espinoza's mother and sister, the cell phone was valued at $350; the computer was purchased for $800, but was valued at over $3,000;there was $150 in U.S. currency on Espinoza's person; the PlayStation 3 was valued at $400; Espinoza's clothing was valued at $600; the instruments were valued at $400; the TV was valued at $249; the "clock" to which Orozco referred could

26

reasonably be understood to refer to Espinoza's stereo, which was valued at between $200 and $250; and the iPod was valued at $150. The jury could have concluded from this testimony that the total value of the items was more than $2,500. Therefore, the fourth element is satisfied. Finally, the theft and disposal of this property occurred between January 4, 2010 and January 6, 2010. There was sufficient evidence to support the conviction for receiving stolen property.

**CONCLUSION**

{47}    We vacate Ramirez's conviction for armed robbery in order to avoid a violation of his right against double jeopardy. We affirm Ramirez's remaining convictions.

{48}    **IT IS SO ORDERED.**


_____

**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**


_____

**PETRA JIMENEZ MAES, Chief Justice**


_____

**RICHARD C. BOSSON, Justice**

27

_____

**CHARLES W. DANIELS, Justice**


_____

**BARBARA J. VIGIL, Justice**