# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-030**

**Filing Date: February 25, 2020**

**No. A-1-CA-37742**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MIGUEL OTERO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa A. Hart, District Judge**

Certiorari Denied, April 22, 2020, No. S-1-SC-38194. Released for Publication June 23, 2020.

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Lisa Torraco
Albuquerque, NM

for Appellant

## OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant appeals from the district court's denial of his petition to withdraw his plea. On appeal, Defendant argues that he was not advised of the loss of his constitutional Second Amendment right to bear arms that resulted from the plea and that he should now be permitted to withdraw his plea on that basis. We affirm.

## DISCUSSION

**{2}** In 2001 Defendant entered a plea to six counts of armed robbery, each with a firearm enhancement; false imprisonment; second degree kidnapping; and resisting, evading, or obstructing an officer. In 2018, four years after his sentence was fully served, including probation, and two years after he had been arrested and charged in federal court for being a felon in possession of a firearm, Defendant filed a coram nobis motion in the present case under "Rule 1-060 [NMRA] and/or Rule 5-803 [NMRA]" for relief from judgment and to withdraw his plea. *See* Rules 1-060, 5-803; *State v. Tran*, 2009-NMCA-010, ¶ 15, 145 N.M. 487, 200 P.3d 537 ("The writ of error coram nobis is an appropriate procedure for a postjudgment challenge to a guilty plea allegedly induced by mistake, fraud, or coercion." (internal quotation marks and citation omitted)). Specifically, Defendant sought to withdraw his plea based on his contention that he was never advised of the consequences to his Second Amendment right to bear arms at the time of the plea; that this lack of advisement constituted ineffective assistance of counsel; and that the judgment was void as a matter of law because it was not knowing, intelligent, and voluntary. The district court denied his motion to withdraw the plea, concluding that the Second Amendment advisement was not required at the time of Defendant's plea, and that Defendant presented insufficient evidence supporting his claim of ineffective assistance of counsel.

## I. Standard of Review

**{3}** "The decision of whether a defendant should be permitted to withdraw a plea is discretionary with the trial court; thus, on appeal we review the trial court's ruling to determine whether, under the facts offered in support of the motion, the trial court abused its discretion." *State v. Lozano*, 1996-NMCA-075, ¶ 9, 122 N.M. 120, 921 P.2d 316. "A court abuses its discretion when it is shown to have acted unfairly, arbitrarily, or committed manifest error." *State v. Hunter*, 2006-NMSC-043, ¶ 11, 140 N.M. 406, 143 P.3d 168 (internal quotation marks and citation omitted). "A denial of a motion to withdraw a guilty plea constitutes manifest error when the undisputed facts establish that the plea was not knowingly and voluntarily given." *Id.* (internal quotation marks and citation omitted).

## II. Timeliness of Defendant's Coram Nobis Application

**{4}** As a preliminary matter, we address the timeliness of Defendant's coram nobis application. Rule 5-803 formalized the common law concept of coram nobis and "is deemed to have superseded former Rule 1-060(B) for post-sentence matters involving criminal convictions, including the writ of coram nobis." *State v. Gutierrez*, 2016-NMCA-077, ¶ 30, 380 P.3d 872 (quoting Rule 5-803 comm. cmt.) (omission and emphasis omitted). "Rule 5-803 is 'effective for all cases filed on or after December 31, 2014.' " *Gutierrez*, 2016-NMCA-077, ¶ 30 (internal quotation marks omitted) (quoting N.M. S. Ct. Order No. 14-8300-014).

**{5}** The State argues that Defendant's motion may only be brought under Rule 5-803(C), which requires that such a motion be brought "within a reasonable time after the completion of the petitioner's sentence[.]" Rule 5-803(C). The State thus argues that

Defendant's coram nobis motion from 2016 was untimely because it was not brought within a reasonable time and Defendant provided no explanation for his years of delay. Conversely, Defendant argues Rule 5-803 does not apply to his case because his underlying criminal case was filed long before Rule 5-803 was effected. Defendant further argues that his motion was filed under Rule 1-060 because he claims that the judgment was void, and, as such, there was no time limit to bringing the motion. *See Gutierrez*, 2016-NMCA-077, ¶ 20 (reiterating that "there is no limitation of time within which a motion must be filed under the provisions of Rule 1-060(B)(4)" because "[a] judgment which is void is subject to direct or collateral attack at any time" (alteration, internal quotation marks, and citations omitted)).

**{6}** We dealt with a similar argument in *Gutierrez*; however, in that case, "Rule 5-803 was not in effect at the time of [the d]efendant's motion." *Gutierrez*, 2016-NMCA-077, ¶ 30. Although this Court's reference to "the time of [the d]efendant's *motion*" might indicate that the file date of the coram nobis motion is the applicable reference point, we did not determine whether the effective date in fact relates to the motion or the original, underlying criminal case in which it was filed. *Id.* (emphasis added). Instead, we concluded that the district court properly considered the defendant's motion under Rule 1-060(B)(4), which was the only rule in effect at the time the defendant's motion had been filed. *See Gutierrez*, 2016-NMCA-077, ¶ 20.

**{7}** In the present case, the district court denied Defendant's petition for post-sentence relief on the merits and did not address the timeliness question. Accordingly, we need not resolve which rule applies in the present case. Either Rule 1-060 would apply, in which case timeliness is not a concern, or Rule 5-803 would apply, in which case the district court could have determined that Defendant's delay in filing the coram nobis motion was reasonable, based on an argument that the conviction is void for his counsel's failure to inform him of his Second Amendment rights. Given that the district court ruled on the merits of the coram nobis motion, we review the same. *Cf. L.D. Miller Constr., Inc. v. Kirschenbaum*, 2017-NMCA-030, ¶ 15, 392 P.3d 194 (stating that "the district court would have been within its discretion to determine that the late motion was not simply an attempt to evade the time for appeal"; and declining to engage in an independent assessment of the defendants' motives).

## III.   Second Amendment Advisement

**{8}** Turning to the merits, Defendant argues that, because his counsel should have informed him of the impact of his guilty plea on his Second Amendment rights, Defendant's plea was not knowing, intelligent, and voluntary. *See State v. Paredez*, 2004-NMSC-036, ¶ 5, 136 N.M. 533, 101 P.3d 799. Although a requirement that a defendant be advised of the loss of his Second Amendment rights to possess firearms when he pleads guilty was first promulgated in 2007, Defendant argues that he should have nevertheless been advised of the loss of his Second Amendment rights prior to his 2001 plea. *See* Rule 5-303(F)(6) NMRA.

**{9}** Defendant urges us to adopt the reasoning in *Paredez* and *Ramirez v. State*, 2014-NMSC-023, 333 P.3d 240, in his case. In *Paredez*, our Supreme Court analyzed whether the failure to advise a client of the immigration consequences of a plea constituted ineffective assistance and held that it does, remanding to the district court for an evidentiary hearing to determine whether the defendant's counsel in that case was, in fact, effective. *See* 2004-NMSC-036, ¶¶ 13-15, 16, 24. The Court reaffirmed that, when "a defendant is represented by counsel during the plea process and enters his or her plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* ¶ 13 (alteration, internal quotation marks, and citation omitted).

**{10}** Ten years later, our Supreme Court considered whether the rule announced in *Paredez* should apply retroactively. *See Ramirez*, 2014-NMSC-023, ¶ 9. The Court in *Ramirez* reiterated that "New Mexico does not give retroactive effect to a new criminal procedure rule" and explained that the pertinent test is "whether a previously issued judicial opinion introduced a new rule of criminal procedure or merely expanded upon an already established rule." *Id.* ¶ 11. In identifying when an exception to the general rule should apply, the Court stated that "new rules generally should not be afforded retroactive effect unless (1) the rule is substantive in nature, in that it alters the range of conduct or the class of persons that the law punishes, or (2) although procedural in nature, the rule announces a watershed rule of criminal procedure." *Id.* (internal quotation marks and citation omitted).

**{11}** We first address the second exception. Defendant contends the mandate to advise a criminal defendant of the loss of his Second Amendment rights is a watershed rule. We disagree.

> [W]atershed rules of criminal procedure implicate[] the fundamental fairness and accuracy of the criminal proceeding. Whatever the precise scope of this exception, it is clearly meant to apply only to a small core of rules requiring observance of those procedures that are implicit in the concept of ordered liberty.

*Graham v. Collins*, 506 U.S. 461, 478 (1993) (omission, internal quotation marks, and citations omitted). However, our Supreme Court reiterated in *Kersey v. Hatch* that "[t]he watershed exception is extremely narrow[,]" noting that, since the United States Supreme Court identified the two exceptions to the "general rule of nonretroactivity for cases on collateral review[,]" it "has rejected every claim that a new rule satisfied the requirements for watershed status." 2010-NMSC-020, ¶¶ 24-25, 148 N.M. 381, 237 P.3d 683 (internal quotation marks and citation omitted). Based on this standard, we hold that the requirement that a criminal defendant be advised of the impact of a guilty plea on his or her right to bear arms does not implicate the "fundamental fairness and accuracy of the criminal proceeding[,]" and is, thus, not a watershed rule. *Graham*, 506 U.S. at 478; *see Paredez*, 2004-NMSC-036, ¶ 9 (stating that the trial court is not obligated to "inform defendants of all possible consequences flowing from a guilty plea").

**{12}**    We therefore turn to the first exception of nonretroactivity: a new rule that is substantive in nature. *See Ramirez*, 2014-NMSC-023, ¶ 11. Defendant contends that Rule 5-303(F)(6), requiring that a defendant be advised of the impact of a guilty plea on his or her right to bear arms, is not a new rule because it existed at the time he entered his plea. He argues that, because the amendment to the rule to include Subsection F, "which mandates the district court judge to advise the defendant that his guilty plea will affect his constitutional right to bear arms, should apply retroactively because it is a constitutional right in which [Defendant] can claim the benefits of the plain error doctrine." We again disagree.

**{13}**    As our Supreme Court explained in *Kersey*, a "new rule" is one that "breaks new ground or imposes a new obligation on the [s]tates or the [f]ederal [g]overnment. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." 2010-NMSC-020, ¶ 16 (internal quotation marks and citation omitted). "Thus, a court establishes a new rule when its decision is flatly inconsistent with the prior governing precedent and is an explicit overruling of an earlier holding." *Id.* (internal quotation marks and citation omitted). "A rule that is not deemed a 'new rule' by this test may apply retroactively." *Ramirez*, 2014-NMSC-023, ¶ 11. Although it is true that the right to bear arms is not a new *right*, the *rule* requiring that a defendant be advised of the impact of a guilty plea *on his right* to bear arms was new as of the amendment of the rule in 2007. *See* Rule 5-303 comm. cmt. (describing the addition of Subsection (F)(6) in 2007). Defendant has provided no authority indicating that this rule existed in common law earlier than 2007, so we assume no such authority exists. *See State v. Casares*, 2014-NMCA-024, ¶ 18, 318 P.3d 200 (stating that "[w]e will not consider an issue if no authority is cited in support of the issue, because absent cited authority to support an argument, we assume no such authority exists").

**{14}**    Defendant nonetheless argues that the advice of the loss of his right to bear arms is at least as crucial as advice of immigration consequences, so his case should "have the same result" as cases that "support[] the withdrawal of a plea for failure to advise a criminal defendant of the statutory immigration consequences[.]" However, although it is true that our Supreme Court determined that a defendant must be informed of the immigration consequences of a guilty plea, it applied its ruling retroactively only to 1990, when the requirement to advise of immigration consequences was first included in the plea colloquy in New Mexico. *See Ramirez*, 2014-NMSC-023, ¶¶ 14, 17 (highlighting that *Paredez* does nothing more than apply an existing rule). As such, even applying *Ramirez* to the present case, Defendant is afforded no relief. The rule requiring advisement of the impact of a plea on a defendant's right to bear arms applies from when the rule first made such a requirement in 2007. As Defendant entered his plea in 2001, several years prior to the pertinent amendment of Rule 5-303, we hold that Defendant's counsel was not ineffective for not advising Defendant of the impact of his plea on his right to bear arms; Defendant's plea was not involuntary, unknowing, or unintelligent based on the fact that he was not so advised; and the district court did not abuse its discretion in denying Defendant's motion to withdraw his plea on

these grounds. *See Paredez*, 2004-NMSC-036, ¶ 5; *see also Ramirez*, 2014-NMSC-023, ¶ 8.

**{15}** To the extent Defendant argues that the district court's failure to advise Defendant was a violation of due process, we are likewise unpersuaded. As our Supreme Court explained in *Paredez*, due process does not require the trial court to "inform defendants of all possible consequences flowing from a guilty plea." 2004-NMSC-036, ¶ 9. Rather, "[t]he trial court only has a duty to ensure that the defendant understands the 'direct' consequences of the plea but is under no duty to advise the defendant of the plea's 'collateral' consequences." *Id.* The fact that a federal court might use the consequences of Defendant's 2001 guilty plea in a 2016 federal prosecution is a collateral consequence, and the district court was under no obligation to advise Defendant of this collateral consequence in 2001. *See id.*

**{16}** Finally, Defendant argues that because his right to bear arms is a constitutional right, he is entitled to advice on the loss of that right as a result of his plea, and the failure to advise him on such loss necessarily means his counsel was ineffective. However, Defendant provides no authority for such a proposition, and we are aware of none. *See Casares*, 2014-NMCA-024, ¶ 18 (stating that "[w]e will not consider an issue if no authority is cited in support of the issue, because absent cited authority to support an argument, we assume no such authority exists"). Indeed, we note that a defendant also loses voting rights and is not informed of such prior to a guilty plea, and we are aware of no authority that requires that a constitutional right be discussed and identified prior to a defendant entering in a plea, particularly as it is a collateral consequence. *See id.*; *see also Paredez*, 2004-NMSC-036, ¶ 9 (noting that the trial court only has a duty to ensure that a defendant understands the *direct* consequences of a plea); *see generally* Rule 5-303(F) (identifying only a handful of the consequences resulting from a guilty plea that must be discussed with a defendant prior to entry of a plea). We therefore hold that the district court did not violate Defendant's due process rights by failing to advise him regarding the impact of a guilty plea on his Second Amendment rights in 2001. *Cf. Paredez*, 2004-NMSC-036, ¶¶ 10-11 (stating that deportation is not within the control and responsibility of the district court and is, hence, collateral to a conviction; a "district court's silence regarding the immigration consequences of a defendant's guilty plea does not violate that defendant's federal constitutional right to due process"; and, as such, advising the defendant that his plea "could" affect his immigration status was, likewise, not constitutionally defective).

## CONCLUSION

**{17}** For the foregoing reasons, we affirm

**{18}** **IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JACQUELINE R. MEDINA, Judge**